[Cite as *State v. Blevins*, 2017-Ohio-4444.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105023**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## BARRY BLEVINS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-597731-A

**BEFORE:** Celebrezze, J., McCormack, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** June 22, 2017

**ATTORNEY FOR APPELLANT**

Russell S. Bensing
1360 East 9th Street, Suite 600
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:    Hannah Smith
           Brian Radigan
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Barry Blevins ("appellant"), brings this appeal challenging the trial court's imposition of consecutive sentences. Specifically, appellant argues that the trial court imposed consecutive sentences without making the required findings under R.C. 2929.14(C)(4) and that the maximum sentence imposed by the trial court is not clearly and convincingly supported by the record. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶2} Appellant was indicted, entered a plea, and was sentenced in two separate criminal cases: Cuyahoga C.P. No. CR-14-592088-A and Cuyahoga C.P. No. CR-15-597731-A. This appeal pertains to the sentence imposed in the latter case.

CR-14-592088-A

{¶3} On December 23, 2014, the Cuyahoga County Grand Jury returned an eight-count indictment charging appellant with (1) drug trafficking, in violation of R.C. 2925.03(A)(2); (2) drug possession, in violation of R.C. 2925.11(A); (3) drug trafficking, in violation of R.C. 2925.03(A)(2); (4) carrying a concealed weapon, in violation of R.C. 2923.12(A)(2); (5) improperly handling a firearm in a motor vehicle, in violation of R.C. 2923.16(B); (6) receiving stolen property, in violation of R.C. 2913.51(A); (7) having weapons while under disability, in violation of R.C. 2923.13(A)(2); and (8) having weapons while under disability, in violation of R.C. 2923.13(A)(3). Counts 1 through 3

contained one-year firearm specifications and forfeiture specifications. Counts 4 through 8 contained forfeiture specifications. Appellant pled not guilty to the indictment.

{¶4} On June 2, 2015, appellant entered a plea of no contest to all eight counts in the indictment. The trial court advised appellant of his constitutional rights and penalties implicated by his plea of no contest. Furthermore, based on the evidence proffered by the state, the trial court found appellant guilty on all counts and specifications. The trial court proceeded immediately to sentencing and imposed an aggregate three-year prison term.

{¶5} On June 30, 2015, appellant filed an appeal challenging his convictions. This court determined that the trial court's June 2, 2015 sentencing journal entry did not accurately reflect what transpired during the sentencing hearing, and remanded the case to the trial court for a nunc pro tunc sentencing entry.

{¶6} On January 12, 2016, the trial court issued a nunc pro tunc sentencing entry indicating that Counts 1 and 2 merged for sentencing purposes, and the state elected to sentence appellant on Count 1; Counts 7 and 8 also merged for sentencing purposes, and the state elected to sentence appellant on Count 7.

{¶7} In *State v. Blevins*, 2016-Ohio-2937, 65 N.E.3d 146 (8th Dist.), this court held that the trial court properly denied appellant's motion to suppress and affirmed appellant's convictions. *Id.* at ¶ 2.

CR-15-597731-A

{¶8} On October 11, 2014, the victim, David Garrett, was shot and killed during an

altercation outside of a nightclub on Cleveland's west side. On August 3, 2015, the Cuyahoga County Grand Jury returned a 12-count indictment charging appellant with (1) murder, in violation of R.C. 2903.02(A); (2) murder, in violation of R.C. 2903.02(B); (3) felonious assault, in violation of R.C. 2903.11(A)(1); (4) felonious assault, in violation of R.C. 2903.11(A)(2); (5) voluntary manslaughter, in violation of R.C. 2903.03(A); (6) involuntary manslaughter, in violation of R.C. 2903.04(A); (7) discharge of a firearm on or near prohibited premises, in violation of R.C. 2923.162(A)(3); (8) aggravated assault, in violation of R.C. 2903.12(A)(1); (9) aggravated assault, in violation of R.C. 2903.12(A)(2); (10) tampering with evidence, in violation of R.C. 2921.12(A)(1); (11) having weapons while under disability, in violation of R.C. 2923.13(A)(2); and (12) having weapons while under disability, in violation of R.C. 2923.13(A)(3). Counts 1 through 6 contained one- and three-year firearm specifications, notice of prior conviction specifications, and repeat violent offender specifications. Count 7 contained one- and three-year firearm specifications and a notice of prior conviction specification. Counts 8 and 9 contained one- and three-year firearm specifications. Appellant pled not guilty to the indictment.

{¶9} The parties reached a plea agreement. The state amended Count 5 by deleting the one-year firearm specification and the notice of prior conviction and repeat violent offender specifications. On August 1, 2016, appellant pled guilty to Count 5, voluntary manslaughter, a first-degree felony, and the underlying three-year firearm specification. The remaining counts and specifications charged in the indictment were

nolled. The trial court ordered a presentence investigation report ("PSI") and set the matter for sentencing.

{¶10} The trial court held a sentencing hearing on August 31, 2016. The trial court sentenced appellant to a prison term of 14 years: three years on the firearm specification to be served prior to and consecutively with 11 years on the voluntary manslaughter count. The trial court ordered appellant to serve this 14-year sentence consecutively with his three-year prison sentence in CR-14-592088-A.

{¶11} On September 29, 2016, appellant filed the instant appeal challenging the trial court's sentence. He assigns two errors for review:

I. The trial court's imposition of consecutive sentences was contrary to law.

II. The trial court's imposition of maximum and consecutive sentences is clearly and convincingly unsupported by the record.

## II. Law and Analysis

### A. Consecutive Sentences

{¶12} In his first assignment of error, appellant argues that the trial court failed to make the requisite findings pursuant to R.C. 2929.14(C)(4) prior to imposing consecutive sentences.

{¶13} We review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 16. R.C. 2953.08(G)(2) provides that when reviewing felony sentences, a reviewing court may overturn the imposition of consecutive sentences where the court "clearly and convincingly" finds that (1) "the record does not support the sentencing

court's findings under R.C. 2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law."

{¶14} R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that consecutive sentences are (1) necessary to protect the public from future crime or to punish the offender, (2) that such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (_) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶15} Compliance with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings at the sentencing hearing, which means that "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). Further, the reviewing court must be able to discern that the record contains evidence to support the findings. *State v. Davis*, 8th Dist.

Cuyahoga No. 102639, 2015-Ohio-4501, ¶ 21, citing *Bonnell* at ¶ 29. A trial court is not, however, required to state its reasons to support its findings, nor is it required to give a rote recitation of the statutory language, "provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." *Bonnell* at ¶ 37.

**{¶16}** In the instant matter, appellant concedes that the trial court made the first R.C. 2929.14(C)(4) finding. In making the first finding, the trial court stated, "I find that consecutive service is necessary to protect the public from future crime[.] * * * I also find it's necessary to adequately punish you for the crime." (Tr. 131-132.) Furthermore, regarding the third finding, appellant does not challenge the trial court's determination that R.C. 2929.14(C)(4)(b) and (c) applied. In making the third finding, the trial court stated,

> I also find that the crimes were — at least two of these crimes were committed as part of one or more courses of conduct. And I find that the harm caused by the multiple offenses was so great that no single prison term to these multiple offenses would suffice.

> Finally, I also find that your history of criminal conduct demonstrates that consecutive sentences are necessary, as I said earlier, to protect the public from future crime.

(Tr. 132.)

**{¶17}** Appellant's challenge to the trial court's imposition of consecutive sentences pertains to the second R.C. 2929.14(C)(4) finding, commonly referred to as the "disproportionate" or "proportionality" finding. *See State v. Hauser*, 8th Dist. Cuyahoga No. 103880, 2016-Ohio-7710, ¶ 37; *State v. Amey*, 8th Dist. Cuyahoga Nos. 103000 and 103001, 2016-Ohio-1121, ¶ 16.

{¶18} Regarding the trial court's proportionality finding, appellant concedes that the trial court found that "consecutive sentences are not disproportionate to the seriousness of [his] conduct." (Tr. 132.) However, appellant argues that the trial court failed to find that consecutive sentences are not disproportionate to the danger he poses to the public. As such, appellant asserts that the trial court's proportionality finding was insufficient.

{¶19} In support of his argument, appellant directs this court to *State v. Vinson*, 8th Dist. Cuyahoga No. 103329, 2016-Ohio-7604. There, this court concluded that "the trial court failed to make a finding at the sentencing hearing that consecutive sentences are not disproportionate to the seriousness of [the defendant's] conduct." *Id*. at ¶ 69. In imposing consecutive sentences, the trial court stated:

> the Court is going to make these findings so it could help to understand your sentence. That consecutive sentences are necessary to protect the public from future crime. That consecutive sentences are necessary to punish the defendant. The Court finds that consecutive sentences are not disproportionate to the danger the offender poses to the public. And the Court finds that your history indicates that consecutive sentences are necessary to protect the public from future crimes.

*Id*. This court explained that the trial court did not make the specific finding that consecutive sentences were not disproportionate to the seriousness of the defendant's conduct, nor could such a finding be discerned from the court's other statements. *Id*. at ¶ 70. Accordingly, this court vacated the trial court's imposition of consecutive sentences and remanded the matter to the trial court to determine whether consecutive sentences

were appropriate and, if so, to make the requisite R.C. 2929.14(C)(4) findings. *Id*. at ¶ 72.

**{¶20}** In *State v. Morris*, 8th Dist. Cuyahoga No. 104013, 2016-Ohio-7614, this court faced a similar argument regarding the trial court's R.C. 2929.14(C)(4) proportionality finding. In imposing consecutive sentences, the trial court stated that consecutive sentences "are not disproportionate." *Id*. at ¶ 27. On appeal, the defendant-appellant argued that the trial court's proportionality finding was insufficient because the court did not specify whether its finding was related to the seriousness of his conduct, the danger he posed to the public, or both. *Id*. at ¶ 29. This court rejected appellant's proportionality argument and held that "[t]he trial court's statements on the record indicate that it considered proportionality both with regard to the seriousness of [the defendant's] conduct and the danger he poses to the public." *Id*. at ¶ 34. This court relied on *State v. Crawley*, 8th Dist. Cuyahoga No. 102781, 2015-Ohio-5150, where this court rejected the defendant-appellant's argument regarding the specificity of the trial court's proportionality finding and concluded that "the trial court's failure to identify the factors — or 'the reasons' — that were considered in its proportionality analysis does not render the consecutive sentences contrary to law." *Crawley* at ¶ 12-13.

**{¶21}** The *Morris* court also relied on *Amey*, 8th Dist. Cuyahoga Nos. 103000 and 103001, 2016-Ohio-1121. There, this court held that "the trial court's statements on the record clearly indicate that it considered proportionality with regard to the seriousness of Amey's conduct and the danger presented." *Id*. at ¶ 16. This court explained,

[t]he [trial] court remarked that Amey was on probation for a domestic violence conviction in Cuyahoga C.P. No. CR-13-578704. The court noted that he had been referred to domestic violence classes but did not attend them. The court also outlined Amey's extensive record that included crimes of violence and offenses committed while Amey was on community control sanctions. The court remarked that he had not "responded favorably to sanctions previously imposed." Viewing the court's remarks in their entirety, we are satisfied that the trial court made a distinct "proportionality" finding in compliance with the statute.

*Id.*

{¶22} In the instant matter, we initially note that a trial court is not required to give a "talismanic incantation of the words of [R.C. 2929.14(C)(4)], provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 37. Here, unlike *Morris*, *Crawley*, and *Amey*, the trial court did not merely state that consecutive sentences "are not disproportionate." Rather, the trial court stated that "consecutive sentences are not disproportionate to the seriousness of [appellant's] conduct." (Tr. 132.)

{¶23} After review, the record reflects that the trial court did not specifically state that consecutive sentences would not be disproportionate to the danger appellant poses to the public. However, we find that the trial court's statements on the record — when viewed in their entirety — clearly indicate that the trial court considered proportionality with regard to both the seriousness of appellant's conduct and the danger appellant posed to the public.

**{¶24}** In imposing consecutive sentences, the trial court expressly found that consecutive sentences were "necessary to protect the public from future crime" and "necessary to adequately punish [appellant] for [the voluntary manslaughter offense]." The trial court further acknowledged that appellant had an "unremitting criminal history" that included offenses of violence. Regarding the proportionality finding, the trial court stated, "I also find that consecutive sentences are not disproportionate to the seriousness of your conduct. In [CR-14-592088-A and CR-15-597731-A], two months apart, you had a weapon. The one time you clearly used it, the other time presumably you were ready to use it." (Tr. 132.) Finally, based on appellant's history of criminal conduct, the trial court remarked that consecutive sentences were necessary to protect the public from future crime.

**{¶25}** Viewing the trial court's statements in their entirety, we can discern that the trial court found that consecutive sentences are both not disproportionate to the seriousness of appellant's conduct and not disproportionate to the danger appellant poses to the public.

**{¶26}** The trial court properly incorporated its findings into its sentencing journal entry as required. *Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at syllabus. The trial court's August 31, 2016 sentencing journal entry provides, in relevant part,

> The court imposes prison terms consecutively finding that consecutive service is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the

public; and that, at least two of the multiple offenses were committed in this case as part of one or more courses of conduct, and the harm caused by said multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of defendant's conduct, or defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by defendant.

{¶27} For all of the foregoing reasons, we conclude that the trial court made the appropriate consecutive sentence findings, and the record clearly reflects that the trial court engaged in the correct analysis required under R.C. 2929.14(C)(4). *See State v. Hart*, 8th Dist. Cuyahoga No. 104387, 2017-Ohio-290, ¶ 7. Furthermore, we cannot clearly and convincingly find that the record does not support the trial court's findings.

{¶28} Accordingly, appellant's first assignment of error is overruled.

### B. Maximum Sentence

{¶29} In his second assignment of error, appellant challenges the trial court's imposition of the maximum 11-year sentence for his voluntary manslaughter conviction.

A trial court's imposition of a maximum prison term for a felony conviction is not contrary to law as long as the sentence is within the statutory range for the offense, and the court considers both the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth R.C. 2929.12.

*State v. Seith*, 8th Dist. Cuyahoga No. 104510, 2016-Ohio-8302, ¶ 12. R.C. 2929.11 and 2929.12 are not fact-finding statutes, and a trial court is not required to make specific findings on the record regarding its consideration of those factors nor state its reasons for imposing a maximum sentence or a particular sentence within the statutory range. *Id.*, citing *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234, ¶ 11.

**{¶30}** In *State v. Sergent*, 148 Ohio St.3d 94, 2016-Ohio-2696, 69 N.E.3d 627, the Ohio Supreme Court held that "'[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentence.'" *Id*. at ¶ 34, quoting *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus. This court has held that a trial court's statement in its sentencing journal entry that it considered the required statutory factors, without more, is sufficient to fulfill its obligations under R.C. 2929.11 and 2929.12. *State v. Paulino*, 8th Dist. Cuyahoga No. 104198, 2017-Ohio-15, ¶ 37.

**{¶31}** In the instant matter, appellant argues that the trial court's reasons for imposing the maximum sentence — particularly the court's statements regarding the plea agreement and the benefit appellant received therefrom —  are contradicted and clearly and convincingly unsupported by the record. Specifically, appellant takes issue with the following statements made by the trial court at sentencing:

> I mean, there is no question about it, this is a maximum sentence for the particular crime we're talking about. To me it seems the benefit you received of the plea bargain was the reduction in the crime charged.
> I don't know whether you are in fact guilty of murder. You are not being sentenced for murder, that's for sure. But there is evidence here that if you went to trial would have certainly created a genuine issue of material fact, and would have allowed a jury to decide that you did in fact commit a murder for which a life sentence would have been imposed.
>
> My point is, not to say that it is guaranteed that you would have been found guilty and gotten a life sentence, but to say that a life sentence was possible. And here, to paraphrase [the victim's grandmother], 6, 11, 14 years, you are going to get out of prison. You are not going to spend the rest of your

life in prison, whereas otherwise you might have. Again, recognizing explicitly that you weren't adjudicated guilty of murder, that is for sure.

(Tr. 132-133.)

**{¶32}** Appellant argues that the trial court concluded the benefit from the parties' plea agreement was "one-sided," and that by pleading guilty, appellant eliminated the possibility of being convicted of murder and receiving a life sentence. Appellant contends that the benefit of the plea agreement was not one-sided, and that the state also benefitted from the agreement by avoiding the embarrassment of appellant being acquitted on all 12 counts at trial.

**{¶33}** Appellant further argues that the trial court failed to consider the possibility that he could have been acquitted at trial. In support of his argument, appellant contends that the limited record before the trial court at sentencing provided substantial evidence that the victim was the aggressor and that the victim beat, pistol whipped, and may have even fired a gun at appellant. As such, appellant asserts that "voluntary manslaughter was likely the worst-case scenario for [him] if he'd gone to trial" and suggests that he may have even prevailed at trial under a self-defense theory. Appellant's brief at 8. Finally, appellant asserts that by pleading guilty, he was "foregoing the very real possibility of acquittal at trial." Appellant's brief at 9.

**{¶34}** Initially, we note that appellant's argument is premised on the assumption that the trial court imposed the maximum sentence because of the court's view regarding the benefit appellant received from the plea agreement, rather than the aforementioned factors and considerations that prompted the court to impose consecutive sentences.

**{¶35}** Generally, a trial court may not impose a sentence based upon a "'crime neither charged nor proven.'" *State v. Dari*, 8th Dist. Cuyahoga No. 99367, 2013-Ohio-4189, ¶ 15, quoting *State v. Henley*, 8th Dist. Cuyahoga No. 74305, 1998 Ohio App. LEXIS 5080 (Oct. 29, 1998). Furthermore, this court has held that a trial court may not impose a greater sentence upon a defendant based upon the court's belief that the defendant committed a more serious crime than the charges for which he was convicted. *State v. Peal*, 8th Dist. Cuyahoga No. 97644, 2012-Ohio-6007, ¶ 11, citing *State v. Smith*, 8th Dist. Cuyahoga No. 76919, 2000 Ohio App. LEXIS 3512 (Aug. 3, 2000); *see also Cleveland Hts. v. Seastead*, 8th Dist. Cuyahoga No. 68875, 1995 Ohio App. LEXIS 4513 (Oct. 12, 1995).

**{¶36}** A plea agreement does not, however, preclude the trial court's consideration of the underlying facts of the case in determining the appropriate sentence to impose. *State v. Frankos*, 8th Dist. Cuyahoga No. 78072, 2001 Ohio App. LEXIS 3712 (Aug. 23, 2001); *State v. Clayton*, 8th Dist. Cuyahoga No. 99700, 2014-Ohio-112, ¶ 18. Thus, the trial court is permitted to consider the original charge when imposing its sentencing. *Peal* at ¶ 18.

**{¶37}** This court faced a similar argument in *State v. Smith*, 8th Dist. Cuyahoga No. 101387, 2014-Ohio-5553. There, the defendant-appellant was charged in a three-count indictment with drug trafficking, drug possession, and possession of criminal tools. The parties reached a plea agreement under which the state dismissed the drug trafficking count and appellant pled guilty to the remaining two counts. On appeal,

appellant challenged the trial court's sentence, arguing that "the trial court's comments [at sentencing] demonstrate that the court based the sentences solely on the [trafficking] charge that had been dismissed." *Id*. at ¶ 12. This court rejected appellant's argument and affirmed the trial court's sentence, explaining:

> the record reflects the trial court relied on required statutory considerations, relevant information, and the circumstances underlying Smith's case. The trial court's statements do not reflect that the dismissed charge was "*the sole basis for the sentence.*" *State v. Clayton*, 8th Dist. Cuyahoga No. 99700, 2014-Ohio-112, ¶ 19. Rather, the statements indicate only that the court believed Smith was lying to it. *Reeves*, at ¶ 35. Moreover, concurrent terms of twelve months were within the statutory parameters.
>
> *Id*.

(Emphasis added.) *Smith* at ¶ 17.

{¶38} In the instant matter, the trial court's sentence for appellant's first-degree felony was within the permissible statutory range under R.C. 2929.14(A)(1). The trial court's sentencing journal entry provides, in relevant part, "the court considered all required factors of the law. The court finds that prison is consistent with the purpose of R.C. 2929.11." Aside from the trial court's notation in its sentencing entry that it "considered all required factors of the law" including, specifically, R.C. 2929.11, the record reflects that the trial court did, in fact, consider both R.C. 2929.11 and 2929.12 when sentencing appellant.

**{¶39}** Appellant acknowledges that during the sentencing hearing, the trial court referenced "the provisions of Chapter 2929 of the Ohio Revised Code." (Tr. 129.) Furthermore, the trial court stated that it considered appellant's PSI. The PSI's "offense summary" provides, in relevant part, "[appellant] got up from the fight and the codefendant[, Jean Blevins,] handed [appellant] the .45 caliber handgun. The victim and his girlfriend reportedly began to walk away from the fight and towards their vehicle when [appellant] began shooting towards the victim." The PSI also included a "defendant's version" of the incident, which provided, in relevant part,

> [a Heartless Felons gang member], along with six or seven other people, including the victim, came to the bar and confronted [appellant]. * * * Once they all left the bar, [appellant] stated "they all started jumping me. I was all by myself."
>
> According to [appellant], while they were outside, someone told the victim to go get the gun and he did. The victim told the people who were beating on [appellant] to get out of the way and he started chasing [appellant] down with the gun, [appellant] stated. The victim began shooting at [appellant], and [appellant] tripped. When he tripped, [appellant] fell to the ground, where the victim began pistol whipping him. [Appellant] stated someone knew him from the bar and pulled the victim off of him. The victim then started chasing that guy and the rest of the group, including [the Heartless Felons member], began jumping [appellant] again. According to [appellant, the Heartless Felon] had a gun. He fumbled with it and [appellant] ended up retrieving it from him. [Appellant] stated, "[e]verybody was shooting. I ran and fired back behind me blindly. At least three or four others were shooting. I dropped the gun in the parking lot and ran."

**{¶40}** The trial court stated that it considered the statements made by the state, defense counsel, appellant, the victim's fiancée, and the victim's grandmother.

**{¶41}** The prosecutor asserted that appellant

has a prior record going back to 2003, receiving stolen property motor vehicle; 2006, a felony two drug trafficking; 2010, felony five drug possession; 2010, felony drug possession. And while this case was being investigated, [appellant] was arrested and charged with CCW, drug trafficking, and having a weapon [while] under disability.

(Tr. 88-89.)

{¶42} The trial court inquired as to whether there was evidence that the victim discharged a gun during the altercation. The prosecutor stated that there was a video of the altercation and that the parties disputed whether the video displayed the victim handling a gun. The prosecutor further explained that testing was conducted and there was no gunshot residue on the victim's hands. The trial court inquired as to whether the eyewitnesses who reported the victim had a gun were associated with appellant. The prosecutor asserted that "[t]here [were] two sides to the story." (Tr. 90.)

{¶43} Defense counsel stated that appellant showed genuine remorse for the victim and the victim's family. Defense counsel provided the following factual account of the incident:

> [o]ut in the parking lot there are three other individuals that — including [the victim] — that confronted [appellant]. Once they confronted [appellant], a fight ensued.
>
> [Appellant] was tossed to the ground, and he was pistol whipped. There are three people that indicate that [the victim] had a pistol and was beating my client about the head.

(Tr. 110.) Defense counsel emphasized that one of the witnesses who did not know appellant and was not connected to appellant in any way observed the victim with a

handgun. Finally, defense counsel opined that appellant was "in fear of his life" because the victim had a handgun and at least one shot was fired in appellant's direction.

**{¶44}** The trial court indicated that it considered the state's sentencing memorandum and defense counsel's sentencing memorandum. Defense counsel's sentencing memorandum provided, in relevant part, that the eyewitnesses

> each indicate that the victim * * * was: 1) the aggressor; 2) had a pistol; 3) was "pistol whipping" and beating [appellant] along with several of [the victim's] friends; 4) [e]ither [the victim] or one of his friends shot a weapon at [appellant]; 5) [appellant] attempted to escape but could not; 6) [d]ue to being beat up with a firearm and shot at, [appellant] fired a weapon in haste in order to keep his assailants away and to prevent death or great bodily harm.

On the other hand, the state's sentencing memorandum provided, in relevant part,

> [p]olice and witnesses identified [appellant] fighting with the victim. The victim is seen with an out-stretched arm and what is believed to be a weapon. At one point in the altercation, [appellant] goes to the ground. [Appellant] walks away, but he does not leave. Instead, [appellant] returns armed with a firearm. When the victim turns and leaves the scene, [appellant] comes after the victim. [Appellant] fires a fatal shot into the victim's back.
>
> Upon investigation, police learn that the co-defendant hands [appellant] a firearm. [Appellant] shoots the victim in the back. [Appellant] runs away and tosses the gun. The victim dies from that gunshot wound.

**{¶45}** The trial court considered that when appellant was arrested for drug trafficking on December 17, 2014, he was in possession of a different gun than the gun that had been used during the October 2014 nightclub shooting. Finally, the trial court considered appellant's criminal history, which the trial court described as "unremitting" and noted that it included violent crimes. Appellant's criminal history includes

convictions for robbery, abduction, and having weapons while under disability;[1] drug possession;[2] drug trafficking and drug possession;[3] and receiving stolen property.[4]

{¶46} Regarding appellant's assertion that a voluntary manslaughter conviction would have been the "worst case scenario" had he exercised his right to trial, we find that the limited record regarding the circumstances surrounding the nightclub shooting contained evidence upon which a factfinder could have rejected appellant's contention that he shot the victim based upon serious provocation or in self-defense. According to the PSI's offense summary, the victim was walking away from the fight when appellant began shooting at him. Furthermore, according to the state's sentencing memorandum, appellant walked away from the fight, obtained a firearm, returned to the fight, and shot the victim in the back as the victim was leaving the scene.

{¶47} For all of the foregoing reasons, we cannot say that appellant's sentence is unsupported by the record or contrary to law. The trial court did not err by imposing the maximum 11-year sentence for appellant's voluntary manslaughter conviction.

{¶48} Appellant's second assignment of error is overruled.

### III. Conclusion

---

[1] CR-10-540745-A

[2] CR-10-539842-A

[3] CR-06-478998-B

[4] CR-03-438546-ZA

{¶49} After thoroughly reviewing the record, we find that the trial court did not err by imposing consecutive sentences and appellant's sentence is not contrary to law.

{¶50} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

TIM McCORMACK, P.J., and
ANITA LASTER MAYS, J., CONCUR